IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HEARTLAND CATFISH COMPANY, INC., <u>et</u> <u>al.</u>, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 15-368-CG-M |
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

This matter is before the Court on the motion of Heartland Catfish Company, Inc. ("Heartland") to strike Mary Jane Watson as an Expert (Doc. 99), opposition thereto by Navigators Specialty Insurance Company ("Navigators") (Doc. 113), and Heartland's reply (Doc. 120). For the reasons discussed below, the Court finds that Ms. Watson's proposed testimony is irrelevant. Accordingly, Heartland's motion to strike Watson as an expert will be granted.

This case arises from an underlying lawsuit brought by Heartland against companies insured by Navigators: SmarterFuel Incorporated and Smarter Fuel South, LLC (collectively "SmarterFuel"). In the underlying lawsuit, Heartland obtained a default judgment against SmarterFuel. In the current action, Navigators intends to have Mary Jane Watson testify as an expert regarding appraisals that were submitted to support the default judgment in the underlying action. Heartland seeks to strike Ms. Watson as an expert under Alabama Code § 27-23-2 and Federal Rules of Evidence 401, 402 and 702.

Heartland first cites Alabama Code § 27-23-2 as the basis for its motion to strike. Section 27-23-2 provides that when a corporation obtains a judgment against a party for damage to property and that damage was insured at the time the right of action arose, "the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance." ALA. CODE § 27-23-2. Section 27-23-2 also provides that if the judgment is not satisfied, the judgment creditor may proceed directly against the insurer. *Id.* However, the parties in this case appear to agree that Pennsylvania law, rather than Alabama law, applies substantively to the claims asserted in this case.[1] "Under the doctrine enunciated in *Erie* and its progeny, 'federal courts sitting in diversity apply state substantive law and federal procedural law.' " *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (citations omitted). "[F]or purposes of *Erie*, Alabama's statute circumscribing the right of an injured party to sue directly the alleged tortfeasor's insurer is outcome determinative under *Erie* and is a substantive law." *Canal Ins. Co. v. INA Trucking, LLC*, 2017 WL 1146984, at *5 (M.D. Ala. Mar. 10, 2017), report and recommendation adopted, 2017 WL 1147772 (M.D. Ala. Mar. 27, 2017) (citing *Esfeld v. Costa Crociere, S.P.S.*, 289 F.3d 1300, 1306 (11th Cir. 2002)). Even if Alabama law were applicable to this case, § 27-23-2 does not appear to provide any authority to strike Ms. Watson as an expert witness. The statute simply provides a basis for a direct claim against Navigators as the alleged insurer of the

---

[1] Both Heartland and Navigators cite Pennsylvania law in their briefs and Navigators specifically argues in a footnote that Pennsylvania law applies. (Doc. 113, n. 4, p. 9).

tortfeasor.

Federal Rules 401 and 402 require that evidence must be relevant to be admissible. "To be relevant, evidence must have some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (citing FED. R. EVID. 401). "Implicit in that definition are two distinct requirements: (1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *Id*.

For expert testimony to be admissible it must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corporation*, 269 F.3d 865, 869 (7th Cir. 2001); *see also U.S. v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "[A] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Id*. (citing *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'

3

" *Id.* (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798).

>   Rule 702 of the Federal Rules of Evidence provides:
>
>   A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (b) the testimony is based on sufficient facts or data;
>
>   (c) the testimony is the product of reliable principles and methods; and
>
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The rule compels district courts to "conduct an exacting analysis of the foundations of the expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation marks omitted)). Accordingly, under Rule 702, "this Court has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts." *Whatley v. Merit Distribution Services*, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

Heartland contends that Ms. Watson's opinions on the evidence that supported the default judgment in the underlying action are irrelevant because the correctness of the default judgment is irrelevant to the issues before the Court in the instant action. Navigators disagrees, asserting that Watson is not being offered

to attack the underlying default judgment but to show that Heartland failed to meet its burden of proving that the underlying judgment is covered by Navigators' pollution policy. Navigators states that Watson will testify that the appraisals submitted as evidence in the underlying motion for default judgment cannot be used to show a diminution in value caused by pollution or environmental issues. According to Navigators, the 2014 appraisal submitted to show a diminution in value only covered 20 acres of the property in question and was compared to a 2008 appraisal that determined the fair market value of 120 acres. Additionally, Navigators argues that the 2014 appraisal expressly stated that the valuation "assumed that there are no adverse environmental issues" as they were "not qualified to determine if there are any environmental concerns." (Doc. 99-3, pp. 130-31).

Heartland, on the other hand, argues that Ms. Watson's opinion of the appraisals is irrelevant because the underlying court already determined that Heartland's evidence was sufficient to support an award of $480,000.00 in diminution in value. In Pennsylvania, "[i]t is settled that an insurer that refuses to defend an insured does so at its peril. *Devich v. Commercial Union Ins. Co.*, 867 F.Supp. 1230, 1237 (W.D. Pa. 1994), *aff'd* 66 F.3d 310 (3rd Cir. 1995) (citation omitted). Navigators sent three denial letters to SmarterFuel and several emails to Plaintiff's counsel in the underlying lawsuit, but Navigators never made an appearance in the case and did not contest the default judgment award or the evidence submitted in support of the default judgment. (Docs. 99-4, 99-5). By refusing or failing to defend SmarterFuel and failing to seek a declaratory judgment

regarding coverage, Navigators "lost any chance to challenge the merits of plaintiff's underlying claims. *Devich*, 867 F.Supp. at 1237. Heartland asserted claims for diminution in value and the motion for default judgment sought the total sum of $859,205.53, which included $480,000.00 for diminution in value. (Doc. 99-3, p.2). The Circuit Court of Marengo County, Alabama entered judgment in favor of Heartland and against SmarterFuel "on all remaining counts (Counts IV-VII)" in the amount requested, $859,205.53 without specifying the amounts or types of damages that were included in the total sum. (Doc. 99-2). Count IV asserted a negligence and/or wantonness claim alleging that SmarterFuel's actions resulted in property damage and diminution of value caused by environmental damage. (Doc. 99-1, pp. 1-2). Count V asserted a trespass claim that included a claim for damages that resulted from the wrongful invasion or intrusion of wastewater, products, by-products, waste products, pollution, and/or chemicals into, onto, under, and across [Heartland's] land." (Doc. 99-1, pp. 3-4). The Court agrees that Navigators has lost the chance to attack the merits of these claims or the amount of the default judgment that awarded damages for diminution of value based on those claims.

Navigators argues that Heartland has the burden of showing that the damages it was awarded in the underlying lawsuit actually falls under the coverage provided by Navigators since Heartland bears the burden of proving its loss is covered. *See Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa. Super. Ct. 2014) ("In actions arising under an insurance policy, our courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy." citation omitted).

Navigators asserts that the issue is not whether the diminution in value award is correct, but rather, whether the diminution in value award is covered. Navigators asserts that Ms. Watson's testimony goes to whether the evidence submitted to support the default judgment contains evidence of any damages that are covered under the Navigators pollution policy. According to Navigators, the 2014 appraisal cannot be used to show diminution in value for pollution or environmental damage because it expressly did not consider any such damages and did not use the correct methodology to calculate diminution in value.

In support of their argument Navigators cites *Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1995). In *Butterfield*, the plaintiff sought to collect a portion of a judgment for punitive damage awarded in an underlying malpractice lawsuit from the insurance carrier for the defendants in the malpractice lawsuit. *Id.* 647-48. The insurance company observed the trial, but did not actually participate in the trial and took the position that there would be no coverage for the punitive damages claim. *Id.* at 648. The jury, who had been instructed that they could find the defendant hospital either directly negligent, vicariously negligent or both, returned a verdict in favor of the plaintiff that included an award for $1,750,000 in punitive damages against the defendant hospital. *Id.* The parties agreed to settle the case and an agreed judgment was entered that included the $1,7500,000 in punitive damages against the hospital. *Id.* at 649. The plaintiff initiated garnishment proceedings against the insurance company and the Court entered summary judgment in favor of the insurance company finding that the Plaintiff could not show whether the damages were assessed vicariously, for which there

may be coverage, or directly, for which coverage was precluded. *Id.* at 649. Upon appeal, the Superior Court of Pennsylvania noted the general rule that a party seeking coverage must first show that a policy covers its claims, but stated that it was then the insurer's burden to establish that an exclusion applies. *Id.* at 651-52. The Court found that the plaintiff had shown coverage and held that Pennsylvania public policy precluded recovery of punitive damages based on direct liability, but did not preclude punitive damages based on vicarious liability. *Id.* at 655-56. Because the insurance company could not show that the basis of the jury's punitive damage award was based on direct liability, the Court found that summary judgment must be granted in favor of the plaintiff. *Id.* at 657.

Navigators contends Ms. Watson's testimony is relevant because, based on the holding of *Butterfield*, Heartland must still show that the damages sought were covered under the policy at issue. The Court agrees that Heartland must still show that the policies at issue cover the damages awarded, but finds Ms. Watson's testimony is not relevant to that issue. Whether there was a diminution in value, and the amount of diminution was decided by the underlying lawsuit. The merits of Heartland's underlying claim cannot now be attacked by Navigators, nor can the method used to calculate damages be questioned. In the *Butterfield* case the award was ambiguous as to whether the punitive damages awarded by the jury, and later agreed to by the parties, were based on vicarious liability, which would was covered, or direct liability, which was not covered. However, in the instant case, the merits of Heartland's claims for diminution of value caused by environmental damage are admitted by virtue of the default. The only diminution of value claimed in the

8

underlying complaint was alleged to have resulted from environmental damage to the property. Heartland will still have to prove that coverage existed. For example Heartland must establish that there were policies in place during the times at issue, that the policies cover the diminution in value caused by environmental damage as alleged in the underlying complaint, and that any other pertinent terms of the policy were met. However, Heartland does not have to establish any facts that were determined by the underlying lawsuit. Ms. Watson's proposed testimony goes only to whether there was a diminution in value caused by environmental damage and whether the amount of damage awarded was properly calculated. These issues have already been determined by the underlying lawsuit and Navigators has lost its chance to contest them.

**CONCLUSION**

For the reasons stated above, the motion of Heartland Catfish Company, Inc. to strike Mary Jane Watson as an Expert (Doc. 99), is **GRANTED.**

**DONE** and **ORDERED** this 24th day of April, 2017.

                                /s/ Callie V. S. Granade
                                SENIOR UNITED STATES DISTRICT JUDGE