## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

|                                            |   |                                    |
|--------------------------------------------|---|------------------------------------|
| **HEARTLAND CATFISH COMPANY, INC., <u>et</u> <u>al.</u>,** | ) |                     |
|                                            | ) |                                    |
| **Plaintiff,**                             | ) |                                    |
|                                            | ) |                                    |
| **vs.**                                    | ) | **CIVIL ACTION NO. 15-368-CG-M**   |
|                                            | ) |                                    |
| **NAVIGATORS SPECIALTY INSURANCE COMPANY,** | ) |                   |
|                                            | ) |                                    |
| **Defendant.**                             | ) |                                    |

## <u>ORDER</u>

This matter is before the Court on the motion of Navigators Specialty Insurance Company ("Navigators") for summary judgment (Doc. 114), the motion and amended motion of Heartland Catfish Company, Inc. ("Heartland") for summary judgment (Docs. 117, 136), Navigators' response in opposition (Doc. 126), Heartland's response in opposition (Doc. 128), Navigators' reply (Doc. 140) and Heartland's reply (Doc. 141). For the reasons discussed below, the Court finds that Heartland has not met its burden of establishing coverage under Coverage A or Coverage B of the policies at issue. The Court also finds that Heartland has abandoned any claim for coverage under the other coverage provisions contained in the policies. Therefore, Navigators' motion for summary judgment will be granted and Heartland's motion and amended motion will be denied.

## FACTS

This action arises from an underlying lawsuit brought by Heartland against companies insured by Navigators: SmarterFuel Incorporated and Smarter Fuel

South, LLC (collectively "SmarterFuel").[1] Navigators issued commercial environmental policies to SmarterFuel from 2011 to 2014. SmarterFuel operated a business that purchased fat, oil, and grease ("FOG") and recycled it into fuel. (Doc. 118-2, ¶ 3).

SmarterFuel entered into a FOG Extraction Agreement with Heartland in April 2011. (Doc. 137-1, pp. 10-11, 17-18; Doc. 137-5). In May of 2011, SmarterFuel rented property from Heartland to open up a plant in Demopolis, Alabama to refine FOG into fuel. (Doc. 118-2, ¶ 4; Doc. 137-1, p. 19; Doc. 137-9). The Lease Agreement states that the agreement was executed "in conjunction with the establishment of a FOG Extraction Agreement" between the parties and that the existence of the FOG Extraction Agreement was consideration for and an inducement for the Lease Agreement. (Doc. 137-9, p. 12). A second FOG Agreement was executed in April 2012. (Doc. 137-10). The Lease Agreement and FOG Agreements contained indemnification provisions wherein Smarter Fuel indemnified Heartland from tort liabilities and other actions of SmarterFuel's agents and others acting on behalf of SmarterFuel. (Doc. 137-5, p. 4; Doc. 137-9, pp. 7-8; Doc.137-10, p. 3). SmarterFuel began refining FOG at the Demopolis plant in July or August 2011 and stopped in December of 2012. (Doc. 137-1, p. 7; Doc. 137-11, pp. 5-6).

SmarterFuel bought and picked up catfish waste from catfish farms and used cooking oil from gas stations and restaurants. (Doc. 137-1, pp. 8 -13, 15-16).

---

[1] *Heartland Catfish Co., Inc. v. SmarterFuel South, LLC, et al.*, CV-213-900026, Circuit Court of Marengo County, Alabama.

SmarterFuel paid for the waste material and picked up the waste materials using its own drivers or hired third-party commercial carriers. (Doc. 118-2 ¶ 5, 137-1, pp. 21-22). The FOG was then unloaded outside the plant in an area called the pit, or inside the plant into the "dumpster frac tank." (Doc. 137-3, p. 4; Doc. 137-4, ¶¶ 4, 6). The unloading and loading process was messy and FOG and fuel would leak or spill on the property. (Doc. 137-3, pp. 4-9). The FOG was refined inside the plant and SmarterFuel would then sell and ship the finished product to buyers using SmarterFuel's own commercial drivers and tankers. (Doc. 118-2, ¶¶ 6, 8, 9). Sometimes the fuel was transported from or to one of SmarterFuel's other plants before it was shipped to its final destination. (Doc. 137-1, pp. 43-47). Wastewater and accumulated rainwater that was pumped and extracted off the FOG before it was refined was also transported off the property and sold to consumers. (Doc. 137-3, p. 5; Doc. 137-13, ¶ 3).

SmarterFuel tried to clean and contain the spills using shovels, a Bobcat and Front-loaded, gravel, hay, dirt, and a kitty litter type product to absorb the FOG. (Doc. 137-1, pp. 35-36, 37, 54; Doc. 137-3, pp. 6-9). SmarterFuel had a designated four-person cleanup crew. (Doc. 137-3, p. 6). "It was a very messy process from the time the FOG was unloaded until the waste or final product were hauled away from the Plant." (Doc. 137-3, p. 6). Any FOG or final product that spilled on the property occurred unintentionally as the operations were messy and spills, overflows, and leaks were unavoidable. (Doc. 137-3, pp. 8-9). "The Demopolis Plant was always nasty." (Doc. 118-14, p. 3, ¶ 10). Spills would occur onto the inside floor during the

loading and unloading of the trailers due to leaking trailers or hoses having excess FOG run out of them. (Doc. 119-4, p. 3, ¶ 10).  The back of the plant was always messy too, the hoses would leak while they were being used to load trailers, and afterwards there would be wastewater, rain water or final product dripping out of them and onto the ground. (Doc. 119-4, p. 3, ¶ 10).  An employee reports that he often stepped in the greasy and oily material on the ground and then would not be able to get it off his shoes. (Doc. 119-4, p. 3, ¶ 10).  SmarterFuel employees appeared to try to avoid grease and oil escaping from the hoses or trailers, but it was unavoidable because the process and materials they were dealing with were so hot, sticky and nasty. (Doc. 118-14, p. 3, ¶ 13).  SmarterFuel employees did their best to clean up the spills. (Doc. 137-1, p. 35; Doc. 137-3, p. 9).

In February 2013, after SmarterFuel had ceased operating at the Demopolis plant, Heartland began cleaning up the grease, fat and oil left by SmarterFuel. (Doc. 118-29, ¶ 3).  Heartland also spent time draining, removing and disposing of SmarterFuel's equipment. (Doc. 118-29, ¶ 13).  Heartland's General Maintenance Technician, Lynn Cole, states that she "think[s] the clean-up crew spent about 60% of its time cleaning up the grease and oil from SmarterFuel's operations as opposed to removal of its equipment." (Doc. 118-29, ¶ 13).

Heartland filed the underlying lawsuit against SmarterFuel on March 1, 2013, in the Circuit Court of Marengo County, Alabama for breach of the lease agreement for failing to pay rent and for allowing liens to be placed against the property. (Doc. 116-4).  The original claims are not part of the judgment for which

Heartland seeks coverage in the instant case. On September 12, 2013, Heartland amended its complaint to add claims for negligence, wantonness and trespass. (Doc. 116-5). Count IV asserted a negligence and/or wantonness claim alleging that SmarterFuel's actions resulted in property damage and diminution of value caused by environmental damage. (Doc. 116-5, pp. 2-3). Specifically, Count IV asserted that SmarterFuel was "negligent and/or wanton in the operation of its facilities conducted on and near the land located at 101 Lloyd Dollar Drive, Demopolis, Alabama" and in failing "to take or implement appropriate monitoring, supervision, remedial and/or corrective measures, including its failure to notify or warn [Heartland], after the discharges and emissions of the products, by-products, waste products, pollution, and/or other contaminants occurred on the subject property and surrounding property." (Doc. 116-5, p. 3). Count V asserted a trespass claim that claimed damages resulting from the wrongful invasion or intrusion of wastewater, products, by-products, waste products, pollution, and/or chemicals into, onto, under, and across [Heartland's] land." (Doc. 116-5, pp. 4-5). Counts VI and VII asserted claims against fictitious parties and against SmarterFuel for "negligence/wantonness combined and concurred with the negligence and/or wantonness" of the fictitious parties. (Doc. 116-5, p. 5). Heartland obtained a default judgment against SmarterFuel on Counts IV-VII. The Circuit Court of Marengo County, Alabama entered judgment in favor of Heartland and against SmarterFuel "on all remaining counts (Counts IV-VII)" in the amount requested, $859,205.53, without specifying the amounts or types of damages that were

included in the total sum. (Doc. 137-27). Navigators sent denial letters to SmarterFuel and corresponded by email with Heartland's counsel in the underlying lawsuit, but Navigators never made an appearance in the case and did not contest the default judgment award or the evidence submitted in support of the default judgment. (Doc. 137-30). The Marengo County Circuit Court awarded the entire amount requested in Heartland's motion for default judgment against SmarterFuel, which included:

| | |
|---|---|
| Supplies, Equipment, Fees, and Power | $188,245.89 |
| Salaried Labor | $106,108.00 |
| Hourly Labor | $ 84,851.64 |
| Diminution in Value | $480,000.00 |
| | ----------------- |
| | Total: $859,205.53 |

(Doc. 99-3, p. 2, Doc. 99-2).

Navigators reports that it first received notice of Heartland's claim on October 2, 2013, when it received a forwarded email from attorney Jay Potts. (Doc. 116-23, p. 7; Doc. 116-24). The original email was sent by Heartland's attorney on September 27, 2013 to Mr. Potts, who had been retained by Navigators to represent SmarterFuel in another matter. (Doc. 116-24; Doc. 116-26).

In the current action, Heartland seeks a declaration that Navigators' policies of insurance covered the claims in the underlying lawsuit, that Navigators owes a duty to indemnify SmarterFuel with respect to the underlying lawsuit and that Navigators has breached the policies of insurance it issued to SmarterFuel. (Doc. 58, p. 9).

SmarterFuel was insured by Navigators under three policies with policy periods spanning: May 25, 2011-May 25, 2012; May 25, 2012-March 25, 2013; and March 25, 2013-March 25, 2104. (Docs. 137-32, 137-32, 137-34). The coverage in each policy was the same except that the last policy removed the Demopolis plant as an "insured site" because SmarterFuel was no longer operating there. (Doc. 137-2, p. 40). Heartland obtained an assignment of SmarterFuel's rights under the policies issued by Navigators. (Docs. 137-35, 137-36).

The policies include the following coverages:

## A. Contractor's Jobsite Pollution Liability

### 1. Third-Party Claims

We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as **loss** resulting from any **claim(s)** for **bodily injury**, **property damage** or **environmental damage** when the aforesaid injury or damage:

**a.** occurs during the **policy period;**

**b.** is caused by a **pollution incident** resulting from **contracting operations**; and

**c.** is both unexpected and unintended from the standpoint of the insured.

## B. Pollution Liability for Transportation Activities

### 1. Third-Party Claims

We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as **loss** resulting from any **claim(s)** for **bodily injury**, **property damage** or **environmental damage** when the aforesaid injury or damage:

**a.** occurs during the **policy period**;

**b.** is caused by a **pollution incident** resulting from **transportation activities**; and

**c.** is both unexpected and unintended from the standpoint of the insured.

## D. Contractor's Maintenance Yard Pollution Liability

### 1. Third Party Claims

We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as **loss** resulting from any **claim(s)** for **bodily injury**, **property damage** or **environmental damage** when the aforesaid injury or damage:

**a.** located on, under or migrating from an **insured site**;

b. that commences on or after the Coverage D Retroactive Date stated in Item 5 of the Declarations; and

c. is both unexpected and unintended from the standpoint of the insured.

provided such claims are first made against the insured and reported to us during the policy period, or, if applicable, during the extended reporting period.

The policies include the following exclusion:

With respect to all coverages, this policy does not apply to any loss:

### 1. Contractual Liability

based upon or arising out of the liability of others assumed by any insured in a contract or agreement. This exclusion does not apply to liability that **you**:

a. would have in the absence of the contract or agreement;

b. assume in a written contract or agreement that is an **insured contract**, provided the **pollution incident** commences subsequent to the execution of the contract or agreement; or, solely with respect to Section I., Coverage **A. Contractor's Jobsite Pollution Liability**,

c. assume in a written contract or agreement with your client for any **pollution incident(s)** that (1) result from **contracting operations** of **your** subcontractors and (2) commence subsequent to the execution of the contract or agreement.

The policies contain the following definitions:

**Contracting operations** means those operations or activities, conducted by you or on your behalf that you have been retained by a third party to perform at a jobsite. …

**Insured contract** means:

…

**2.** that part of any contract or agreement pertaining to **your contracting operations** (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury**, **property damage** or **environmental damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement: or …

**Jobsite** means a location where contracting operations are performed, but does not include the following

**1.** any **insured site(s)**, **waste disposal facility(ies)** or **non-owned locations(s)**; or …

**Pollution Incident** means the discharge, dispersal, release, seepage or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, petroleum hydrocarbons, low level radioactive materials, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, …

**Transportation activities** means the movement of **cargo** by **you**, or by a third-part properly licensed to carry **cargo**, using a **covered auto**, rolling stock or water craft:

**1.** while in due course of transit beyond the legal boundaries of a **jobsite, waste disposal facility, non-owned location**, or an **insured site**;

**2.** from the point of origin until the point of final destination, including the loading and unloading of **your** cargo when the point of origin or final destination is any location other than a **jobsite, waste disposal**

> facility, **non-owned location**, or **insured site**; and
>
> 3. excepting therefrom, any **cargo** at rest for a period longer than seven (7) calendar days.

The policy also provides that for any coverage that requires a claim be "first made against an insured and reported to **us** during the **policy period**", then "**you are entitled to an extended reporting period as outlined in VII. A or VIII. B below.**"

Subsection VII. A. provides an automatic extended reporting period and subsection VIII. B. provides an optional supplemental extended reporting period that can be purchased. Under subsection VII. A. an extended reporting period of ninety (90) days is automatically provided for no additional premium as follows:

> The Automatic Extended Reporting Period begins on the date the policy is terminated … and applies to claims first made against the insured and reported to us during the Automatic Extended Reporting Period. A **claim** first made and reported to **us** during the Automatic Extended Reporting Period will be deemed to have been made on the last day of the policy period provided the **claim** arises from a **pollution incident** that commenced prior to the end of the policy period and would otherwise be covered under this policy.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential

element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Claims Asserted**

Heartland's claims are based on the policies of insurance provided by Navigators to SmarterFuel. The parties agree that Pennsylvania law governs Heartland's contract claims as the receipt and acceptance of the policies in question

took place in Pennsylvania. (Doc. 129, p. 18). Under Pennsylvania law, the interpretation of an insurance contract is generally a question of law to be determined by the Court. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999) (quoting *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n*, 512 Pa. 420, 426, 517 A.2d 910, 913 (1986)). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.* (quoting *Gene & Harvey Builders, supra*). "Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Id.* (quoting *Gene & Harvey Builders, supra*). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' " *Id.* (quoting *Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986)). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* (citations omitted). "In the absence of an ambiguity, the plain meaning of the agreement will be enforced. *Murphy v. Duquesne Univ. Of The Holy Ghost*, 565 Pa. 571, 591, 777 A.2d 418, 430 (2001) (citing *Gene & Harvey Bulders, supra*).

Heartland, who has stepped into the shoes of SmarterFuel, bears the burden of proving the claimed losses are covered by the policies. *See Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa. Super. Ct. 2014) ("In actions arising under an insurance policy, our courts have established a general rule that it is a necessary

prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy." citation omitted). If the claim falls within the coverage provided but an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, "the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Const. Co.*, 557 Pa. at 605, 735 A.2d at 106 (citations omitted).

Navigators contends in its summary judgment motion that the claims asserted in the underlying lawsuit are not covered by the policies. Navigators asserts that Heartland has only claimed coverage under subsection B ("Pollution Liability for Transportation Activities") and subsection D ("Contractor's Maintenance Yard Pollution Liability"). Heartland contends that it had claimed coverage under all four coverage subsection (A, B, C & D), but that it "has narrowed down its allegations to assert the allowed coverage are Coverage A – Contractors Jobsite Pollution Liability ("Coverage A") and Coverage B – Transportation Pollution Activities ("Coverage B")." (Doc. 129, p. 2). Accordingly, the Court finds that to the extent they were originally asserted, Heartland has abandoned any coverage claims under subsections C and D of the insurance policies. The Court will therefore only address coverage under subsections A and B of the policies - "Contractor's Jobsite Pollution Liability" and "Pollution Liability for Transportation Activities."

## 1. Coverage A - Contractor's Jobsite Pollution Liability

Navigators first contends that Heartland should be prohibited from seeking

coverage under Coverage A because in Heartland's discovery responses it only identified Coverage B and Coverage D as the provisions Heartland contends provides coverage for the judgment in the underlying litigation. As stated previously, Heartland contends that it has always alleged coverage under all four policy coverages. The Court notes that the Amended Complaint in this action alleges that the policies in question provide coverage for:

> "Contractors Jobsite Pollution Liability", "Pollution Liability for Transportation Activities", "Pollution Liability for Waste Disposal Activities/ Non-Owned Locations", and "Contractors Maintenance Yard Pollution Liability,"

(Doc. 58, p. 5, ¶ 17). Count I of the Amended Complaint also states that coverage is provided under all four of the listed coverage provisions. (Doc. 58, ¶ 22). However, when the Amended Complaint lists the "relevant language" contained in the policies it quotes only the coverage provision for Coverage B and terms defined by the policy that might apply to claims under Coverage B. (Doc. 58, pp. 5-7). Thus, although the Complaint broadly alleges coverage under all four of the provisions it suggests that Coverage B is the real provision at issue. (Doc. 58, ¶ 23).

During discovery, Navigators asked Heartland to "identify all provisions under the Navigators policy that you contend provide coverage for the judgment in the underlying litigation." (Doc. 116-17, p. 5, ¶ 12). In response, Heartland first objected to the question on the basis that it was overly broad, unduly burdensome, it calls for a legal conclusion, and to the extent it requires the disclosure of attorney-client privilege. (Doc. 116-17, pp. 5-6, ¶ 12). Heartland then stated the following:

> Without waiving said objection, Plaintiff contends at this time that the Pollution Liability for Transportation Activities and Contractor's Maintenance Yard Pollution Liability. However, Plaintiff may add or change the provisions of Navigators policies that it contends provides coverage for the judgment in the underlying litigation if facts are discovered during the discovery process that justify coverage under different or additional provisions of the Defendant's policies.

(Doc. 116-17, ¶ 12). Despite numerous amendments to its discovery responses, Heartland never indicated during discovery that it was seeking coverage under Coverage A – Contractor's Jobsite Pollution Liability.

Under Rule 26(e), "[a] party who has … responded to an interrogatory… must supplement or correct its disclosure or response" "in a timely manner if the party learns that in some material respect the … response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e). If a party without substantial justification fails to disclose required information, then that party "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). The non-producing party has the burden of showing that its actions were substantially justified or harmless. *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001) (citing *Burney v. Rheem Mfg. Co.*, 196 F.R.D. 659, 691 (M.D. Ala. 2000)). "'Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is

satisfied if there is [a] genuine dispute concerning compliance.'" *Chapple v. Alabama*, 174 F.R.D. 698, 701 (M.D. Ala. 1997)(quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995)). Failure to make the required disclosures is harmless "when there is no prejudice to the party entitled to the disclosure." *Id.* The court recognizes that "merely having to depose a party on information that should have been disclosed in a Rule 26 Report is a form of prejudice." *McClain v. Metabolife International, Inc.*, 193 F.Supp.2d 1252, 1259 (N.D. Ala. 2002).

The Court finds that in the instant case Heartland was not justified in failing to supplement its response. Although Heartland had objected to the question, it answered the question indicating that its claims were limited to claims under Coverage provisions B and D. Had Heartland simply objected to the question and not answered it, the objection could have been addressed by the Court upon motion by either party. Instead, Heartland provided a presumably complete answer leading Navigator to rely on the information.

Heartland contends that Navigators was not prejudiced by its failure to supplement the response. Navigators has not pointed to any discovery it would have sought had it known that Heartland intended to pursue recovery under Coverage A. Navigators has fully supported its arguments at summary judgment concerning Coverage A without indicating that it was prejudiced by not knowing that Heartland intended to pursue its claim under Coverage A. As such, the Court finds that Navigators has not been prejudiced and that Heartland's claim under Coverage A should not be stricken under Rule 37(c).

To establish coverage under subsection A of the policies, Heartland must show that the loss resulted from claims for property damage or environmental damage and that the damage: 1) occurred "during the policy period," 2) was "caused by a pollution incident resulting from contracting operations" and 3) was "both unexpected and unintended from the standpoint of the insured."

The Court notes that Heartland, by obtaining the default judgment, has already established that there has been a loss resulting from property or environmental damage. The factual allegations of the underlying complaint were admitted by virtue of the default and by refusing or failing to defend SmarterFuel and failing to seek a declaratory judgment regarding coverage, Navigators "lost any chance to challenge the merits of plaintiff['s] underlying claims." *Devich v. Commercial Union Ins. Co.*, 867 F.Supp. 1230, 1237 (W.D. Pa. 1994), *aff'd* 66 F.3d 310 (3rd Cir. 1995) *Devich*, 867 F.Supp. at 1237.  In Pennsylvania, "[i]t is settled that an insurer that refuses to defend an insured does so at its peril." *Id.* (citation omitted).  However, it is not clear that the allegations of the underlying complaint establish that the loss occurred during the policy period, that it was caused by a "pollution incident" resulting from "contracting operations" or that it was unexpected and unintended.

Navigators asserts that Coverage A does not cover Heartland's claims because the property or environmental damage did not occur on a "jobsite."  The heading of Coverage A indicates that it is coverage for "Contractors *Jobsite* Pollution Liability." (emphasis added).  Additionally, the provision requires that it

be caused by a "pollution incident" that resulted from "contracting operations." The policy states that "contracting operations" "means those operations or activities, conducted by you or on your behalf that you have been retained by a third party to perform at a jobsite." Thus, to be covered the damage must result from operations or activities SmarterFuel was retained to perform at a "jobsite." The policy states that "jobsite" "means a location where contracting operations are performed, but does not include" "any insured site(s), waste disposal facility(ies) or non-owned locations(s)."

It is undisputed that all operations by SmarterFuel that allegedly caused the damages at issue occurred at the Demopolis site. The Demoplis site was an insured site under the first two policies. It was only removed as an insured site from the third and final policy because SmarterFuel was no longer operating at the Demopolis site. SmarterFuel's operations and activities on the property all occurred while the Demopolis site was an insured site and Heartland has not demonstrated or even argued that the damages occurred after Heartland ceased operations. Because the damage did not result from "contracting operations," Heartland's claims do not fall under Coverage A.

Heartland argues that Coverage A applies under the exclusion to the Contractual Liability exclusion under the policy. (Doc. 129, p. 19). Heartland refers to the Contractual Liability exclusion, which excludes, with respect to all coverages, any loss "based upon or arising out of the liability of others assumed by any insured in a contract or agreement," but states that the exlusion does not apply under

19

certain cirumstances. Heartland argues that the loss falls under two of the

exceptions to the exclusion. For instance, the policy states that the exclusion does

not apply to liability that SmarterFuel "assume[d] in a written contract or

agreement that is an insured contract, provided that pollution incident commences

subsequent to the execution of the contract or agreement." However, even if

Heartland were correct that the liability satisfies one of the exceptions to the

exclusion, Navigators does not rely on the exclusion. For the loss to be covered by

Coverage A, Heartland must first show that Coverage A covers the loss. Had

Heartland established coverage under Coverage A, the burden would have turned to

Navigators to show that an exclusion applied. Since Coverage A does not apply

without reliance on the exlusion, the exceptions to the exclusion are not relevant.

Accordingly the Court finds Heartland's claims are not covered under Coverage A of

the policies.

2. **Coverage B - Pollution Liability for Transportation Activities**

To establish coverage under subsection B of the policies, Heartland must

show that the loss resulted from property damage or environmental damage, and

that the damage: 1) occurred "during the policy period," 2) was "caused by a

pollution incident resulting from transportation activities," and 3) was "both

unexpected and unintended from the standpoint of the insured."

As discussed with regard to Coverage A, the default judgment has

established that a loss occurred that resulted from property or environmental

damage. However, Heartland must still establish that the three prongs listed above

are satisfied as the Court finds the allegations of the underlying complaint do not establish that the damage occurred during the policy period, was caused by a pollution incident resulting from transportation activities and was both unexpected and unintended. The policy requires that to qualify as "transportation activities" the movement of the cargo must be "[w]hile in the due course of transit *beyond* the legal boundaries of a jobsite, waste disposal facility, non-owned location, or an insured site." (emphasis added). Navigators argues that the spills occurred at the insured site, not while in transit beyond the legal boundaries of the insured site. However, it is unclear from the language of the policy whether "in transit beyond the legal boundaries" restricts the pertinent time to while the cargo is actually beyond the legal boundaries or instead to any time while cargo is in the process of being moved to or from beyond the legal boundaries. The evidence in this case indicates that the cargo being unloaded onto the insured site was being trucked in from beyond the legal boundaries and the cargo being loaded from the insured site was being moved to beyond the legal boundaries. Given the ambiguity, the Court must construe the clause in favor of the insured. *Madison Const. Co.*, 557 Pa. at 606, 735 A.2d at 106 (citation omitted). The Court finds that Heartland's interpretation of the language is reasonable and is consistent with other provisions of the policy. The second part of the policy definition of "transportation activities" makes clear that loading and unloading of the cargo is included under certain circumstances. To qualify as "transportation activities" the movement of the cargo must be:

> from the point of origin until the point of final destination, including the loading and unloading of **your** cargo when the point of origin or

final destination is any location other than a **jobsite, waste disposal facility, non-owned location**, or **insured site.**

Thus, the unloading and loading of the materials on the insured site is included so long as either the point of origin *or* the final destination is not "a jobsite, waste disposal facility, non-owned location, or insured site." Navigators argues that the activities do not qualify because the destination of the FOG was the Demopolis plant which was an insured site and the point of origin of the fuel was also the Demopolis plant. However, because the clause uses "or" rather than "and," only one of those points (either the point of origin or the destination) must be a non-insured site. The cargo in this case was on its way to or from a consumer or a vender, although on occasion it was shipped to another SmarterFuel location before ultimately being shipped to a consumer. The third prong of the definition makes clear that even a stop at another SmarterFuel location is still covered so long as it does not sit longer than seven days before moving on to its ultimate destination.

Navigators asserts that the loss does not satisfy the third prong of Coverage B - that the damage "is both unexpected and unintended from the standpoint of the insured." Heartland's employees have testified or averred that the spills were unintentional, but Navigators contends those statements also shows that the spills were unavoidable and expected. Although SmarterFuel attempted to prevent and contain the spills SmarterFuel employees and contractors knew they were occurring regularly and testified that they were unavoidable. However, Coverage B does not require that the spills be unexpected, but rather that the resulting property and environmental damage be unexpected. Because this is a coverage requirement,

Heartland has the burden of showing that the damage was unexpected. No evidence has been brought to the Court's attention concerning SmarterFuel's knowledge or expectation that the continuous spills on the property would cause damage. The term "unexpected" "implies a degree of fortuity." *IDS Prop. Cas. Ins. Co. v. Schonewolf*, 111 F. Supp. 3d 618, 623 (E.D. Pa. 2015) (citation omitted). "[A]n actor is presumed to intend the natural and expected results of his actions." *Id.* at 624 (citation omitted). Thus, damage is not accidental, and therefore unintended and unexpected, "if the injury was the natural and expected result of the insured's actions." *Id.* at 623. In the instant case the evidence has overwhelmingly shown that the whole process, from unloading to when the final product was hauled away, was very messy. Although SmarterFuel tried to clean up the mess, the leaks and spills were unavoidable and constant and much of what SmarterFuel did to address the situation simply covered up some of the mess. SmarterFuel clearly knew the greasy mess was a problem and that the property needed to be cleaned up. The Demopolis plant by all accounts was always nasty with greasy and oily material on the ground that clearly would have to be cleaned up or dealt with before the property could be used for other purposes. This damage to the property was the natural and expected results of SmarterFuel's actions. Accordingly, the Court finds that Heartland has not shown that the damage was unexpected and, therefore, that Coverage B does not apply to the claims.

## CONCLUSION

For the reasons stated above, the motion of Navigators Specialty Insurance

Company for summary judgment (Doc. 114), is **GRANTED** and the motion and amended motion of Heartland Catfish Company, Inc. for summary judgment (Docs. 117, 136), are **DENIED**.

      **DONE** and **ORDERED** this 15th day of May, 2017.

                    /s/ Callie V. S. Granade
                    SENIOR UNITED STATES DISTRICT JUDGE